IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LOUIS REED, JR.,
      Petitioner,

v.                           Case No.  5:10cv264/MW/CJK

MICHAEL D. CREWS,
      Respondent.

_____

## REPORT AND RECOMMENDATION

Before the Court is a second amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 36). Respondent filed an answer, submitting relevant portions of the state court record. (Docs. 34, 35; *see also* Doc. 68). Petitioner replied. (Docs. 42, 69). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was initially received into the Florida Department of Corrections

("DOC") on November 2, 1990, having been sentenced on September 28, 1990, to 25 years in prison for Armed Burglary (Count 1), and concurrent terms of 15 years probation for Armed Kidnapping and Attempted First Degree Murder (Counts 2 and 3), in Polk County Circuit Case Number 89-1115. (Doc. 35, App. at 95, 100-108).[1] The probationary terms were to run concurrent with each other and consecutive to the 25-year prison term. (*Id*.). All three offenses were committed on March 15, 1989. (*Id*.).

On April 23, 2001, petitioner completed his 25-year prison term on Count 1, and began serving his probationary terms on Counts 2 and 3. Petitioner had satisfied the 25-year sentence through a combination of time physically served and gain-time applied pursuant to Fla. Stat. § 944.275, as follows:

> 411 Days  Jail Credit
> 3860 Days  Time Served from 9/28/90 to 4/23/01
> 4854 Days  Net Gain-time
> 9125 Days  (25 years)

(App. at 95-96).

Petitioner subsequently violated the terms of his probation and it was revoked on October 7, 2004. (App. at 96, 112-125). Petitioner was sentenced to concurrent terms of 30 years imprisonment on Counts 2 and 3. (*Id*.). The sentencing court awarded petitioner 137 days violation of probation jail credit and directed the DOC to "apply original jail time credit and [ ] compute and apply credit for time served and unforfeited gain time previously awarded on Case/Count 2 and 3", noting that petitioner's offenses were committed before October 1, 1989. (*Id*. at 122). The DOC

---

[1]Unless otherwise noted, all references to the record are to the documents provided in respondent's appendix at Doc.35.

interpreted the court's language as an award of prior prison credit on Count 1 in accordance with *Tripp v. State*, 622 So. 2d 941 (Fla. 1993). (App. at 96, 122, 128-34). *Tripp* applies to guidelines sentences where a defendant is sentenced to a term of prison on one case or count, to be followed by a term of probation on another case or count, and both sentences were imposed using the same guidelines scoresheet. *Tripp* holds that because the two sentences were viewed together at sentencing, they must continue to be viewed together following revocation of the probationary term. *Id*. Thus, if the probation is revoked and the defendant is sentenced to prison, the defendant is entitled to credit for the time served on his prior prison term. *Id*. at 941. The DOC credited petitioner's new cumulative 30-year sentence on Counts 2 and 3 with time petitioner served on the 25-year prison term on Count 1, which was comprised of 411 days original jail credit, 3860 days actual time served and 4854 days gain-time. No gain-time was forfeited, because petitioner's offenses were committed prior to the October 1, 1989 enactment of the amendment to Fla. Stat. § 944.28(1) which authorized the forfeiture of gain-time upon revocation of probation. *See Duncan v. Moore*, 754 So. 2d 708, 710-11 (Fla. 2000). (Doc. 35, App. at 96).

On April 11, 2006, after serving less than two years on the cumulative 30-year term, petitioner reached the tentative release date on the 30-year sentence. A tentative release date is the maximum sentence expiration date less gain-time earned. Fla. Stat. § 944.275. The Florida Parole Commission ("FPC") ordered that petitioner be released from prison to the terms and conditions of conditional release and that petitioner remain on conditional release supervision for a period of time equal in length to the amount of gain-time applied to reduce the incarcerative portion of petitioner's sentence on Count 3, that is, until September 5, 2022. (App. at 135-140);

*see also Mayes v. Moore*, 827 So.2d 967, 970 (Fla. 2002) (holding that under Florida's conditional release program "any gain time an inmate receives is converted into conditional release supervision upon his or her release from prison." ).  At the time of petitioner's release, the 30-year term of imprisonment was comprised of the following:

|   |       |                                                                      |
|---|-------|----------------------------------------------------------------------|
|   | 137   | Days VOP Jail Credit                                                 |
| + | 411   | Days Original Jail Credit on Prior 25-year Prison Term               |
| + | 551   | Days Time Served from 10/7/04 to 4/11/06                             |
| + | 3860  | Days Time Served from 9/28/90 to 4/23/01                             |
| + | 4854  | Days Net Gain-time Earned on Prior 25-year Term                      |
| + | 600   | Days Basic Gain-time Earned on Extended 5-year Term pursuant to Fla. Stat. § 944.275(4)(a)(3) |
| + | 310   | Days Additional Gain-time Earned on 30-year term                     |
| + | 317   | Days Overcrowding Gain-time                                          |
| − | 90    | Days Gain-time Forfeited Due to Disciplinary Action                  |
|   | 10950 | Days (30 years)                                                      |

(App. at 96-97).  On September 4, 2008, the FPC issued a Warrant For Retaking Conditional Release, charging that petitioner violated his conditional release by leaving his county of residence without first securing the consent of his Conditional Release Officer.  (App. at 96, 143).  The FPC revoked petitioner's conditional release on October 29, 2008, ordering that the revocation be effective September 15, 2008, with credit for April 6, 2007 to July 12, 2007 (credit from a prior violation in which petitioner was restored to supervision).  (App. at 96, 144, 141-42).  The FPC did not grant petitioner credit for the time he served on conditional release supervision.  (App. at 96, 144).  The DOC forfeited the gain-time petitioner had earned prior to his release on Conditional Release, pursuant to Fla. Stat. § 944.28(1).  (App. at 96-97).  Section 944.28(1) was amended on July 1, 1988, prior to petitioner's March 15, 1989 date of offense, to authorize the forfeiture of gain-time upon revocation of conditional

release.  *See* Fla. Stat. § 944.28(1) (providing that if conditional release is revoked, "the department may, without notice or hearing, declare a forfeiture of all gain-time earned according to the provisions of law by such prisoner prior to . . . his release. . . .").  The forfeiture of petitioner's gain-time included all gain-time that had been applied to calculate his tentative release date on his 30-year term, which included the gain-time from the prior 25-year term and new gain-time earned on the 30-year term. (*Id*.).

Petitioner challenged the forfeiture of his gain-time in state court.  On July 26, 2009, petitioner filed a petition for writ of habeas corpus in the Circuit Court for Jackson County, Florida, claiming that the DOC unlawfully forfeited gain-time earned on petitioner's original 25-year sentence.  (App. at 1-77).  The DOC filed a response.  (App. at 77-144).  The Jackson County Circuit Court denied the petition on the merits on February 3, 2010.  (App. 177-81).  Petitioner sought review of the circuit court's order through a petition for writ of certiorari filed in the Florida First District Court of Appeal ("First DCA").  (App. at 182-99).  The DOC filed a response.  (App. at 210-28).  The First DCA denied the petition on September 1, 2010, in a one-sentence opinion:  "The petition for writ of certiorari is denied on the merits."  *Reed v. Fla. Dep't of Corr.*, 45 So. 3d 466 (Fla. 1st DCA 2010) (Table) (copy at App. 231).  The mandate issued October 18, 2010.  (App. at 230).

Petitioner filed his original § 2254 in this Court on September 27, 2010.  (Doc. 1, p. 33).  Petitioner's second amended petition, filed on May 6, 2011, raises two grounds for relief:

1. <u>The DOC's calculation of the termination date of petitioner's Conditional Release supervision violated petitioner's due process rights</u>. Petitioner asserts that he was placed on conditional release supervision

for too long by improperly including the net gain-time he earned on his expired 25-year sentence on Count 1 (4854 days) to determine the termination date of his conditional release supervision. Petitioner argues that because he had fully satisfied his 25-year prison term at the time he was conditionally released on Counts 2 and 3, the length of his supervision should have been calculated based only on the amount of gain-time petitioner earned on his violation of probation sentences (1137 days.). (Doc. 36, pp. 4-14).

2. The DOC's improper forfeiture of 4854 days of gain-time upon the revocation of petitioner's conditional release supervision violated petitioner's due process rights. Petitioner argues that the only gain-time subject to forfeiture upon revocation of his conditional release was the 1137 days of gain-time petitioner earned on the VOP sentence, and that the DOC improperly forfeited an additional 4854 days of gain-time petitioner had earned on his prior expired 25-year sentence. (Doc. 36, pp. 15-23).

The essence of petitioner's claims is that the consideration and forfeiture of 4854 days gain-time earned on his 25-year sentence (Count 1), a sentence that expired prior to petitioner's conditional release on his VOP sentences (Counts 2 and 3), unlawfully revived the expired sentence in violation of due process.

Respondent asserts that the FPC and not the DOC has the authority to determine the length of a prisoner's conditional release supervision, and that the DOC is not the proper respondent for petitioner's challenge to the calculation of the termination date of his conditional release. (Doc. 34, pp. 11-12). Nonetheless, respondent asserts that petitioner's two grounds for relief are intertwined and can be summarized as a single claim that the DOC unconstitutionally increased petitioner's sentence, and can be addressed together. (*Id*., p. 11). Respondent maintains that petitioner's claims are not cognizable on federal habeas review, because they involve purely state law issues. (*Id*., pp. 12-13). Respondent further argues that the

calculation of petitioner's conditional release termination date and forfeiture of gain-time did not violate due process, because they were done in accordance with controlling state statutes and case law. (Doc. 34, pp. 14-24).

## LEGAL STANDARDS

### Claims Cognizable on Federal Habeas Review

Section 2254 "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. —, —, 131 S. Ct. 13, 15, 178 L. Ed. 2d 276 (2010) (per curiam) (*quoting* 28 U.S.C. § 2254(a)). "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989); *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

### Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the

legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in

determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by

AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

Petitioner's argument mentions the constitutional principles of "due process" and "jeopardy". (Doc. 36, pp. 4, 8, 12, 23).

A.     Clearly Established Federal Law

     i.     Due Process

In *Swarthout v. Cooke*, — U.S. —, —, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732

(2011), the United States Supreme Court reiterated the clearly established Federal law governing claims asserted under the Due Process Clause:  "[S]tandard analysis under [the Due Process Clause] proceeds in two steps:  We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  *Id.*, 131 S. Ct. at 861 (*citing Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)).

       ii.      Double Jeopardy

The Double Jeopardy Clause provides:  "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. The Clause serves the function of preventing both "successive punishments and . . . successive prosecutions."  *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2855, 125 L. Ed. 2d 556 (1993) (*citing North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)).  The protection against multiple punishments prohibits the Government from "'punishing twice, or attempting a second time to punish criminally for the same offense.'"  *Witte v. United States*, 515 U.S. 389, 396, 115 S. Ct. 2199, 2204, 132 L. Ed. 2d 351 (1995) (emphasis deleted) (*quoting Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S. Ct. 630, 633, 82 L. Ed. 917 (1938).

B.      Federal Review of State Court Decision

The last reasoned state-court decision to address petitioner's claims was the state habeas court's order denying relief.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 806, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) (holding that where there is one reasoned state judgment rejecting the federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground).

The state habeas court denied relief, explaining, in relevant part:

> Petitioner is not entitled to the requested relief. Petitioner's gain time was properly forfeited based upon the revocation of his conditional release supervision pursuant to Section 944.28(1), Florida Statute (Supp. 1988). Because the response to Petitioner's two claims is the same, the ruling will address the claims together.
>
> Petitioner was released to conditional release on April 11, 2006 after serving less than 2 years on a 30 year sentence. A substantial portion of the time he did not have to serve was comprised of gain time. The gain time included the gain time applicable from his 25 year sentence and the gain time applied to the five year extended portion of his 30 year term.
>
> The conditional release statute provides that eligible inmates who are released early through gain time must serve a term of post-release supervision equal in length to the amount of gain time applied. Section 947.1405; *Duncan v. Moore*, 754 So. 2d 708, 710-711 (Fla. 2000); *Mayes v. Moore*, 827 So. 2d 967, 972 (Fla. 2002). If the inmate successfully completes the term of supervision, his sentence is expired. But if he does not, his supervision is revoked and he is returned to prison where all gain time earned before release to conditional release is forfeited.
>
> In accordance with the law, Petitioner was released from his 30 year sentence after serving only two years due in large part to the application of gain time which included the gain time from the 25 year term and gain time earned on the five year extended terms, a total of 5,991 days gain time. Because he was released early due to gain time, he had to serve a term of supervision 5,991 days in length. When he was revoked, the 5,991 days of gain time were forfeited. *See Mayes; Duncan*.
>
> In Petitioner's case, the award of credit following VOP is controlled by *Tripp*. *Tripp* held that in a probationary split case where a term of prison is imposed for one offense and a term of probation is

imposed for another offense, using the same guidelines scoresheet, if the probation is revoked and the inmate is resentenced to prison, credit for prior prison term must be applied to the VOP sentence. This is often referred to as "*Tripp*" credit. The Court held that the relationship between guidelines sentences must be retained through VOP, even if the sentences were imposed for different crimes, in order to preserve the integrity of the guidelines. Thus, Petitioner is entitled to credit for the 25 year term of his 30 year term. Further, as in [sic] instructed in *Green*, if the *Tripp* inmate committed his offense prior to October 1, 1989, the gain time is forfeited and only the prison credit is applied. Petitioner committed his offense prior to October 1, 1989. In accordance with *Green* and *Tripp*, the Department applied credit from Petitioner's 25 year term to his 30 year term. The credit included both prison credit and gain time. There was no gain time forfeiture. <u>*See*</u> *Gibson v. Florida Department of Corrections*, 885 So. 2d 376, 385 (Fla. 2004) (Finding forfeiture of gain time in *Tripp* case lawful and rejecting argument that the initial prison sentence is expired once the inmate is released to the probation sentence such that forfeiture of gain time is unlawfully [sic].)

Once the *Tripp* credit applied, Petitioner served the 30 year sentence in accordance with the law. Upon his release date, the 30 years sentence was comprised of a total of 4,959 days physical time served and 5,991 days gain time (time not served) for a total of 10,950 days (30 years). The 30 year sentence is conditional release eligible, therefore whatever gain time was applied to the 30 year sentence to effectuate an early release is part of the conditional release calculation; that is, 5,991 days. The gain time from the 25 year term retained its character as gain time when applied to the 30 year term. Once applied, it was subject to forfeiture from disciplinary infractions and revocation of conditional release supervision.

Petitioner's claim [is] that because his 25 year sentence is not conditional release eligible, the gain time from the 25 year term cannot be used toward conditional release on the 30 year eligible sentence. He is mistaken. Gain time is not subject to conditional release eligibility; sentences are conditional release eligible. Gain time is simply time not

served on a sentence. The gain time from Petitioner's 25 year term is time he did not serve on his 30 year term, therefore, it is part of the conditional release calculation. His conditional release supervision was calculated based on all gain time used to get him out of prison early, as was his forfeiture.

Inmates, like Petitioner, often claim that when gain time from a prior term is applied to a VOP sentence, the gain time becomes the equivalent of time served such that it can never be forfeited. The Florida Supreme Court has made a point of correcting that line of reasoning and explained that gain time remains gain time even when applied to the new term. *See Eldridge v. Moore*, 760 So. 2d 888, 891 (Fla. 2000). Thus, the Department's authority to forfeit the gain time applied to the 30 year sentences for the conditional release violation was not limited to the gain time earned since Petitioner's return to custody as a probation violator. The gain time initially applied to Petitioner's 25 year sentence and later credited on the 30 year VOP sentences retained its nature as gain time and was, therefore, subject to forfeiture for revocation of Petitioner's conditional release supervision in 2008.

Petitioner also claims that the Department has made him serve more than his court imposed sentence. He relies on *Canty*. *Canty* concerns concurrent sentences and has no application to the Petitioner's case. Moreover, he will not serve more than his current imposed sentence. Petitioner is only serving out his gain time; i.e. the time he did not have to serve on his sentences originally. *See Duncan* at 711.

The worst that can happen is that Petitioner serves his sentences day for day. That is not an expansion of the court imposed sentence. *See Duncan* at 711 ("Due to the award of gain time, Duncan will be released from prison before actually serving 42 months. The remaining time will be served on supervision. Even if Duncan violates his supervision and is returned to prison to serve 42 months "day-for-day," we can hardly say that such a sentence constitutes "cruel and unusual punishment.")

Lastly, Petitioners' claim that this term of supervision was to [sic] long is an issue within the sole purview of the Florida Parole Commission. The Department of Corrections and the Florida Parole Commission are two separate, distinct agencies with different powers and duties. *See Gay v. Singletary*, 700 So. 2d 1220, 1221 (Fla. 1997). The parole Commission, rather that the Department, determines eligibility for conditional release and sets the length and conditions of supervision. *See* Section 947.1405, Florida Statute (Supp. 1988); *See also Rivera v. Singletary*, 707 So. 2d 326 (Fla. 1998) (conditional release is administered by the Parole Commission); *Westlund v. Florida Parole Commission*, 637 So. 2d 52 (Fla. 1st DCA 1994) (Parole Commission determines when an inmate will be on conditional release and sets terms and conditions of release). The Parole Commission also determines whether an inmate had violated the terms and conditions of such release and whether a violation warrants revocation of conditional release supervision. *See* Section 947.141 and 947.1405(2), Florida Statutes (Supp. 1988-2001). The Department follows parole Commission orders and forfeits gain time under sections 944.28(1) and 947.141, Florida Statute, upon revocation of clemency, conditional release, probation or community control, provision release, parole, or control release. As the Department of Corrections does not have authority to determine an inmate's eligibility for or placement on conditional release supervision, or length of supervision, the Parole Commission is the proper party on these matters.

(Doc. 35, App. at 178-180).

The state court's findings of fact are presumed correct. 28 U.S.C. § 2254(e)(1). The state court concluded that petitioner's 4854 days of gain-time was properly considered in calculating petitioner's conditional release supervision termination date, that petitioner's 4854 day so gain-time was properly forfeited upon revocation of petitioner's conditional release, and that petitioner was not required to serve more time than his judicially-imposed sentence. Florida's gain-time and conditional release programs are creatures of Florida state law. This Court will not second guess the

state court's interpretation of Florida law. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("'It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (*quoting Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005)).

Further, as the state court explained, the consideration (and later forfeiture) of petitioner's 4854 days of gain-time from his prior 25-year term did not unlawfully resurrect a sentence that had fully served and did increase petitioner's sentence beyond the sentence originally imposed by the sentencing court. The Florida Supreme Court has said: "[C]onditional release is not an increased punishment program at all, but rather an assistance program designed to 'help these former inmates in bridging the gap between prison and the outside world.'" *Mayes*, 827 So.2d at 971 (*quoting Duncan v. Moore*, 754 So.2d at 710). As further explained in *Mayes*:

> Prior to the 1988 enactment of the conditional release statute, prison inmates' sentences expired when, with the combination of actual time served and gain time, they were released from prison. Since 1988, however, the Legislature has provided that certain inmates must remain under supervision, as determined by the commission, after release from prison for a period of time equal to the amount of gain time awarded. This supervision has been provided under the terms of the statute, and thus, all have constructive knowledge of the applicable law.

827 So.2d at 971-72 (footnotes omitted). Petitioner's offenses were committed on March 15, 1989. When petitioner reached his tentative release date on the VOP sentences, he was required to serve a portion of his sentences, equivalent to the amount of gain-time that had been credited to his VOP sentences, under supervision by the FPC and subject to the FPC's conditions. At the time of petitioner's

conditional release on April 11, 2006, petitioner had actually served less than two years of the cumulative 30-year sentence imposed by the sentencing court in October of 2004 upon petitioner's violation of his probation. Through the benefit of the 4854 gain-time credit to petitioner's VOP sentences, petitioner was released from imprisonment to conditional release supervision earlier than he would have been without the credit.

Further, the DOC's forfeiture of 4854 days of gain-time was consistent with Florida law and did not violate due process principles. Florida Statutes Section 944.28(1) provides:

> (1) If a prisoner is convicted of escape, or if the clemency, conditional release as described in chapter 947, probation or community control as described in chapter 948, provisional release as described in s. 944.277, parole or control release as described in s. 947.146 granted to him is revoked, the department may, without notice or hearing, declare a forfeiture of all gain-time earned according to the provisions of law by such prisoner prior to such escape or his release under such clemency, conditional release, probation, community control, provisional release, control release or parole.

Fla. Stat. § 944.28(1) (2006) (footnotes omitted) (2006). This provision was in place at the time petitioner committed his offenses on March 15, 1989.

To encourage releasees to comply with the terms and conditions of supervision, the conditional release program provides that if the releasee fails to do so, the releasee will be returned to prison, and his gain-time will be forfeited; thus retention of gain-time is dependent not only upon satisfactory behavior while in prison but also upon satisfactory behavior while under supervision after release. *Duncan*, 754 So. 2d at 710. Petitioner had only a conditional interest in the 4854 days gain-time credit upon his release on conditional release supervision; he did not have a vested liberty interest

in that gain-time. Petitioner could retain his gain-time only if he complied with the conditions under which it was given.

Although Florida Statutes § 944.28(1) provides that the DOC may, without notice or hearing, declare a forfeiture of all gain-time earned by a prisoner prior to his release on conditional release supervision if his conditional release is revoked, Florida law expressly provides that prior to revocation of conditional release, a releasee must be afforded an opportunity for a hearing. *See* Fla. Stat. § 947.141(3) (2006). If the releasee elects to proceed with a hearing, Florida law provides that the he must receive written notice of the following: (1) the alleged violation with which he is charged, (2) his right to be represented by counsel, (3) his right to be heard in person, (4) his right to secure, present, and compel the attendance of witnesses, (5) his right to produce documents on his own behalf, and (6) his right of access to all evidence used against him and to confront and cross-examine adverse witnesses. Id. At the revocation hearing, the State must present competent, substantial evidence that the releasee indeed violated the conditions of his supervision. *See Tedder v. Parole Comm'n*, 842 So. 2d 1022, 1025-26 (Fla. 1st DCA 2003). After the hearing, the presiding official must make findings of fact, and two members of the FPC must enter an order determining whether the charge has been sustained. *See* Fla. Stat. § 947.141(4) (2006). If the charge is sustained, the FPC may revoke conditional release and return the releasee to prison to serve the remainder of the sentence imposed. *Id*. Only then is the releasee's previously earned gain time forfeited. Fla. Stat. §§ 947.141(6), 944.28(1) (2006).

This statutory process complies with the due process requirements set forth by the Supreme Court as applicable to parole revocation proceedings. In *Morrissey v. Brewer*, the Supreme Court held that "minimum requirements of due process" include

the following:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. 471, 489, 92 S. Ct. 2593, 2604, 33 L. Ed. 2d 484 (1972).  The minimal due process protections which attach to revocation proceedings do not place upon the prosecutor the burden of proving beyond a reasonable doubt that the defendant committed the alleged acts.  Rather, the Commission may revoke conditional release when it is reasonably satisfied that the "conduct of the [releasee] has not been as good as required by the conditions of [release]."  *See United States v. Taylor*, 931 F.2d 842, 848 (11th Cir. 1991); *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983).

Here, assuming *arguendo* that the minimum due process protections outlined in *Morrissey* apply to conditional release revocations, petitioner does not allege that he did not receive the procedural protections afforded by Fla. Stat. § 947.141 prior to the revocation of his conditional release.  The DOC forfeited petitioner's gain-time only after the revocation occurred.  *See* Fla. Stat. § 944.28(1).  The DOC's revocation of petitioner's gain-time did not violate due process.

## CONCLUSION

The FPC and DOC did not unlawfully resurrect petitioner's prior 25-year sentence when it considered the 4854 days of gain-time in calculating petitioner's conditional release supervision termination date, or when it forfeited the 4854 days

of gain-time upon revocation of petitioner's conditional release. There was no due process or double jeopardy violation. The state court's rejection of petitioner's claims was not contrary to, or an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court. Petitioner is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the second amended petition for writ of habeas corpus (doc. 36) be DENIED, and the Clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 7th day of March, 2013.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).